UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2017 NOV -7 PM 3:30
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Elba Luz Dominguez-Portillo | ) | Case Nos. 17-MJ-4409-MAT |
| Natividad Zavala-Zavala | ) | 17-MJ-4462-MAT |
| Jose Francis Yanes-Mancia | ) | 17-MJ-4461-MAT |
| Blanca Nieve Vasquez-Hernandez | ) | 17-MJ-4499-MAT |
| Maynor Alonso Claudino-Lopez | ) | 17-MJ-4456-MAT |

**DEFENDANTS' MOTION TO DISMISS**
and
**BRIEF IN SUPPORT THEREOF**

Defendants Elba Luz Dominguez-Portillo, Natividad Zavala-Zavala, Jose Francis Yanes-Mancia, Blanca Nieve Vasquez-Hernandez, and Maynor Alonso Claudino-Lopez, by and through undersigned counsel, and respectfully submit this Motion to Dismiss the criminal complaints against them based on violations of their constitutional rights under the Due Process Clause. Defendants show as follows:[1]

I.     PROCEDURAL BACKGROUND

The facts of these five cases are similar and straightforward. And, though defendants were arrested on three separate days, <u>all</u> defendants here are similarly situated. *See* Criminal Complaints. On October 21, 22, and 23, 2017, defendants and their minor children entered the United States from Mexico crossing the Rio Grande

---

[1] At the status conference held in this case on November 1, 2017, the government agreed to consolidate these five cases for purposes of this motion only.

1

River. Border Patrol Agents observed them walking east of the Bridge of the Americas Port of Entry. *Id.* Subsequently, Border Patrol Agents arrested the parents/guardians and their minor children. *Id.* Ms. Dominguez Portillo and her minor child and Ms. Vasquez-Hernandez and her minor child are from El Salvador. *Id.* Ms. Natividad Zavala-Zavala and her grandchild, Mr. Yanez-Mancia and his minor child, and Mr. Claudino-Lopez and his minor child are from Honduras. *Id.*

However, shortly after the arrests, the parents-defendants were separated from their minor children. The parents-defendants are being detained in El Paso charged with misdemeanors for illegal entry under 8 U.S.C. § 1325, while the whereabouts of the minor children remains unknown to the parents-defendants. The parent-defendants do not know *where* in the country, *in what* facility or *under what* conditions these minor children are being held. These minor children range in age from 7 to 16 years. Needless to say, the experience of being separated from their minor children for over two weeks in a foreign country has been stressful and terrifying for these parents-defendants.

## II. LEGAL ARGUMENT

The parents-defendants' separation from their minor children during the children's immigration proceedings, and the premature § 1325 charges against them, constitutes a violation of the *Flores Settlement* and, **most importantly, a violation of the Due Process Clause with respect to the criminal complaints.** The proper remedy here, under basic principles of fairness of the Due Process Clause, is for the government 1) to expeditiously reunite these parents with their minor children

2

pending the resolution of the children's immigration proceedings as mandated by the *Flores Settlement,* and 2) to dismiss the *premature* criminal § 1325 complaints against the defendant-parents under basic due process principles.

**At the outset, it is important to keep in mind that defendants with this motion are <u>not</u> asking the court to analyze the strength of the government's § 1325 cases against them. The parents-defendants' guilt or innocence under § 1325 is <u>not</u> at issue on this motion. Rather, the parents-defendants are asking the court to take into account the element of compulsion, i.e., the separation from their minor children, which removes the <u>voluntariness</u> from their guilty pleas that is required by the Due Process Clause.**

With this in mind, the parents-defendants now turn to legal analysis of their motion to dismiss.

**A. Flores Settlement**

With respect to the function of the *Flores Settlement,* a circuit court recently observed:

> The Flores Settlement arose out of a lawsuit first filed by plaintiffs in the Central District of California in 1985, challenging the policies of the Immigration and Naturalization Service (INS). . . . The Settlement favors family unification, and states the order of preference for persons into whose custody detained minors are to be released, provided that detention is not required to secure their appearance before immigration authorities or to ensure the safety of themselves or others. The Settlement also addresses the appropriate care of those minors who cannot be immediately released, and who therefore remain in federal custody. **This includes providing such minors with the bond hearing . . .**

3

*See Flores v. Sessions III,* 862 F.3d 863, 869 (9th Cir. 2017) (emphasis added).

The *Flores Settlement* applies to <u>all</u> children, whether accompanied or unaccompanied, who are detained in the legal custody of the government. *Flores v. Lynch,* 828 F.3d 898 (9th Cir. 2016); *see also Bunikyte ex rel. Bunikiene v. Chertoff,* No. 1:07-cv-00164-SS 2007 WL 1074070, at *1 (W.D. Tex. Apr. 9, 2007). Here, the *Flores Settlement* implicates the parents-defendants in two respects.

**First,** the *Flores Settlement* provides for the care of minor children by their parents (when parent and child were simultaneously arrested by immigration authorities) while the resolution of the minor children's immigration proceedings is pending. See August 23, 2013, U.S. Immigration and Customs Enforcement's (ICE) Parental Interests Directive in the Course of Civil Immigration Enforcement, available at: http://www.ice.gov/dcolib/detention-refrom/pdf/parental_interest_directive_signed.pdf. ICE's Parental Interests Directive provides:

> **Policy. ICE personnel should ensure that the agency's immigration enforcement activities do not unnecessarily disrupt the parental rights of both alien parents or legal guardians of minor children. Particular attention should be paid to immigration enforcement activities involving: 1) parents or legal guardians who are primary caretakers;** 2) parents or legal guardians who have a direct interest in family court or child welfare proceedings; 3) parents or legal guardians whose minor children are physically present in the United States and are USCs or LPRs. ICE will maintain a comprehensive process for identifying, placing, monitoring, accommodating, and removing alien parents or legal guardians of minor children while **safeguarding their parental rights.**

4

*Id.*

**The Supreme Court** has explained that a parent's right to the custody of their child is among one of the "essential" and "basic civil rights of man." *Stanley v. Illinois,* 405 U.S. 645, 651 (1972). And, the child has a reciprocal right to the care of her parent. *See Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir. 1991). And, **Congress** has expressed its intent to keep children together with their parents when apprehended by immigration authorities. When making appropriations to DHS, Congress has stated:

> The report expresses concern regarding reports that children apprehended by DHS continue to be separated from their parents. The committee's report language encourages ICE to work with reputable nonprofit organizations to consider allowing family units to be placed in the intensive Supervised Appearance Program. **If detention is necessary, the report language encourages ICE to house family members together in nonpenal, home-like environments until the conclusion of their immigration proceedings.**

*See* Department of Homeland Security Appropriations Act, 152 Cong. Rec. E1113-02, 2006 WL 1594390. There is no question that in cases involving minor children, whether accompanied or unaccompanied, the family unit is of paramount concern to Congress.

With this in mind, it is evident that the **Supreme Court, Congress, and the *Flores Settlement*** do not support the government's separation of the five parents from their children in the cases at bar. The government's mechanism of separating

5

the family unit and simultaneously charging and prosecuting these parents with a § 1325 crime *clearly* perverts **Supreme Court, Congressional, and *Flores* Settlement intent.**

**Second,** the *Flores Settlement* provides for the possibility of a simultaneous release of the minor child and custodial parent after a bond hearing while the children's immigration proceedings are pending. *Flores v. Sessions III,* 862 F.3d 863, 868-69 (9th Cir. 2017). The *Flores Settlement* provides for an opportunity to the minor to be released on bond to a parent or guardian. And though the *Flores Settlement* does not provide an affirmative release right for the accompanying parent, a noncriminal alien may be released if he carries the burden of showing that he does not present a danger to others and is not a threat to national security or a flight risk. *Flores v. Lynch,* 828 F.3d at 909; *and In re Guerra,* 24 I. & N. Dec. 37, 38 (BIA 2006). Congress has expressed its intent of **simultaneous release of the juvenile and the parent, legal guardian, or adult relative** when they are apprehended together by immigration authorities. Congress has stated:

> [] the report expresses deep concern about reports that children, even as young as nursing infants, apprehended by Immigration and Customs Enforcement (ICE) are **being separated from their parents** and placed in shelters operated by the Department of Health and Human Services while parents are held in separate jail-like facilities. *__The Committee's report language directs DHS to release families__* or use alternatives to detention whenever possible, **and when detention of family units is necessary, the Committee directs DHS to use appropriate detention space to house them together.**

6

*See* Department of Homeland Security Appropriations Act, 151 Cong. Rec. E1025-01, 2005 WL 1185446.

In fact, Immigration and Customs Enforcement provide that if a parent, legal guardian or adult "cannot be located to accept custody of the juvenile, and the juvenile has identified a parent, legal guardian, or adult relative in Service detention, **simultaneous release of the juvenile and the parent, legal guardian, or adult relative shall be evaluated on a discretionary case-by-case basis.**" *See* 8 C.F.R. § 1236.3(b) (2) (emphasis added.). Because the parent is the primary caretaker, available to take custody and care for his or her child, ICE's Parental Interest Directive supports the release of the parent so that he can resume his or her primary caregiver role. See August 23, 2013, U.S. Immigration and Customs Enforcement's (ICE) Parental Interests Directive in the Course of Civil Immigration Enforcement, available at: http://www.ice.gov/dcolib/detention-refrom/pdf/parental_interest_directive_signed.pdf. A child's unique vulnerability necessitates the release of the parent with the child. Id.

And, the Supreme Court has also remarked that mothers should generally be considered for release along with their children:

> The Board of Immigration Appeals has stated that 'an alien generally . . . should not be detained or required to post bond except on a finding that he is a threat to the national security . . . or that he is a poor bail risk.' . . In the case of arrested alien juveniles, however, the INS cannot simply send them off into the night on bond or recognizance. The parties to the present suit agree that the Service must assure itself that someone will care for those minors pending

7

resolution of their deportation proceedings. **That is easily done when the juvenile's parents have also been detained and the family can be released together[.]**

*Reno v. Flores,* 507 U.S. 292, 295 (1993).

Furthermore, women or men who are bona fide asylum seekers, i.e., those who prove a credible fear of persecution, 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), are eligible to receive an individualized assessment of whether detention is warranted if they prove a credible fear of persecution. Here, nothing in the record indicates that these five parents do not qualify for asylum, much less that they pose any danger that would require their detention. Again, the government's mechanism of separating the family unit and simultaneously charging and prosecuting these parents with a § 1325 crime *clearly* truncates Supreme Court, Congressional, and *Flores Settlement* intent.

### B. Due Process

The text of the Fifth Amendment states: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . ." U.S. Const., amend. V. In *Wong Wing v. United States,* 163 U.S. 228, 238 (1986), the Supreme Court explained, "persons within the territory of the United States . . . and . . . even aliens . . . [may not] . . . be deprived of life, liberty or property without due process of law." *Id; see also Mathews v. Diaz,* 426 U.S. 67, 77 (1976) (stressing that the Fifth Amendment applies even to those "whose presence in this country is unlawful, involuntary, or transitory."); *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 212 (1953)

8

("aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standard of fairness encompassed in due process of law."); *and see also United States v. Campos-Asencio,* 822 F.2d 506, 507, 509 (5th Cir. 1987) (due process applied to noncitizen apprehended for unlawful re-entry).

For children, as for adults, "[f]reedom from imprisonment— from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that [the Due Process] Clause protects." *Zadydas v. Davis,* 533 U.S. 678, 690 (2001).

Here, the government's failure to comply with the *Flores Settlement* results in two clear violations under basic principles of fairness of the Due Process Clause.

**First**, the § 1325 charges against the parents-defendants are <u>premature</u> and exhibit a violation of due process because these parents-defendants are being deprived of an opportunity to explore and exhaust any administrative remedy they may have with respect to the issue of bond and possible refugee or asylum status. The Due Process Clause generally forbids detention beyond extremely short periods— usually a matter of days— absent a hearing before a neutral decision-maker to determine whether further confinement is necessary. Such hearings are a bedrock due process requirement. *See, e.g., United States v. Salerno,* 481 U.S. 739, 750 (1987). Bond hearings are not a new thing under the *Flores Settlement,* in fact, bond hearings are regularly conducted by Immigration Judges for individuals detained by

9

immigration authorities under 8 U.S.C.§ 1226(a); 8 C.F.R. §§ 1003.19(a) and 1236.1(d)(1). Furthermore, refusing an opportunity for an immigration bond to a parent or guardian undermines the children's due process interest in parental care. *See Smith v. Organization of Foster Families,* 431 U.S. 816, 844 (1977).

Moreover, under the *Flores Settlement,* the cases of these parents and children are to be given meaningful review for purposes of refugee or asylum relief. Depriving the parents-defendants the opportunity to a meaningful review of refugee or asylum relief, under the *Flores Settlement,* is crucial in their defense against the government's current § 1325 charges against them. If the parent-defendants and their children qualify for refugee or asylum status, they cannot be prosecuted for being illegally in this country. It is as simple as that. Clearly, the government's lack of compliance with the *Flores Settlement* results in **prejudice** to these parents-defendants. Depriving the parents-defendants the opportunity to explore and exhaust the administrative remedies for refugee or asylum relief that may be available to them and to their children *violates due process and is premature.*

**Second,** and most importantly, the parents-defendants are extremely worried about the safety and well-being of their minor children and want to put these § 1325 charges behind them as quickly as possible in the hopes that they will be reunited with their children as soon as possible. Thus these parents-defendants do not **voluntarily** enter a plea of guilty as required by the Due Process Clause. They plea

10

because they have **no** choice! They have an unfounded hope that pleading guilty is their only avenue to reunite with their children. What would any caring parent do under the circumstances? Would he or she elect to plea in order put this behind him or her as soon as possible in order search for his or her minor child? Or would he or she elect to go to trial and delay an opportunity to check on the welfare of his or her child? These parents left their countries with their children for one obvious reason - they care for their children's welfare and safety. Thus, going to trial is simply a legal fiction for these parents-defendants. The **only** choice for them is to enter a guilty plea and reunite with their minor children as soon as possible. They have no other realistic alternative.

Furthermore, *Padilla v. Kentucky,* 559 U.S. 356 (2010), requires this assistant federal public defender to warn and advise his clients of the prejudicial immigration consequences of a guilty plea, i.e., that they will be deported with no guarantee of being reunited with their children. *Id.* at 368. However, realistically the indigent parents-defendants have no options. They do not have the monetary means to hire an immigration attorney to file a civil action on their behalf to enforce the *Flores Settlement*. Here, *Padilla* is rendered ineffective simply because these indigent parents-defendants cannot seek remedial action. Their only feasible option is to enter a plea of guilty. They want to try to get their children back more than they want to seek a benefit.

11

However, a defendant's guilty plea clearly implicates the Constitution. *See Mabry v. Johnson,* 467 U.S. 504, 507-08 (1984). Due Process guarantees under the Fifth Amendment demand and require that a defendant's guilty plea be **voluntary and intelligent.** *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Due Process requires that a defendant enters a guilty plea based on a voluntary and intelligent choice among the alternative courses of action open to the defendant. "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and therefore void." *Boykin v. Alabama*, 395 U.S.238, 243 n.5 (1969). "[T]he right to due process does not impose strict requirements on the mechanics of plea proceedings. Rather, the right simply requires the record to disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Brady v. United States,* 397 U.S. 742, 747 n.4 (1970). A district court **cannot** accept a guilty plea without an affirmative showing that it was intelligent and voluntary. *Id.* And here, the parent-defendants' guilty pleas will <u>**not**</u> be voluntary.

Quite the contrary, the threat and fear the government applies by keeping the parent-defendants apart from their minor children is a **coercive tactic.** After all, the government is holding their children hostage in unknown places and under unknown conditions. This procedure is constitutionally impermissible because it induces the parents-defendants to plead guilty while under duress. This method

12

employed by the government is calculated and used to coerce the parents-defendants to enter pleas of guilty.

The law, however, is well settled in every circuit. A conviction based upon a plea of guilty induced by threats or fears is inconsistent with due process law. *Murphy v. Wainwright*, 372 F.2d 942, 943 (5th Cir. 1967). The Supreme Court has expressly declared that the innocence or guilt of the accused is irrelevant to the determination of whether or not a conviction squares with the requirements of due process. *Id.* It is likewise clear that a conviction on a coerced plea of guilty is not more consistent with due process than a conviction supported by a coerced confession. *Waley v. Johnston*, 316 U.S. 101, 104 (1942). The bottom line is that if a plea of guilty is the product of coercion, either mental or physical, or was unfairly obtained through ignorance, fear, or inadvertence, the conviction is void. *Kercheval v. United States*, 274 U.S. 220, 223-24 (1927). Period.

**Again, to be clear, the defendants are not seeking that the court analyzes the strength of the government's § 1325 cases against them. As stated above, the parent-defendants' guilt or innocence under § 1325 is not at issue on this motion. Rather, the issue here is whether the parent-defendants' guilty pleas are the product of coercion.** And, the law here is simple and straightforward. When a plea of guilty was the product of coercion, either mental or physical, or was unfairly obtained or given through ignorance, fear or

13

inadvertence, the judgment which it rests upon is void. *Kercheval,* 274 U.S. at 223-24. Fundamental standards of procedure in criminal cases require that a plea of guilty to the charge or charges contained in an indictment or information be entered freely, voluntarily, and without any semblance of coercion. *Waley,* 316 U.S. at 104. Nothing more and nothing less!

Here, the government's practice of: (1) separating the parents-defendants from their minor children, (2) depriving the parents-defendants of the opportunity to exhaust the possible remedies under the *Flores Settlement,* i.e., bond, refugee, and asylum hearings, and (3) charging the parents-defendants under § 1325 is a "reasonably calculated [mechanism] to influence the defendants to the point of coercion into entering their pleas of guilty" which violates due process. *Euziere v. United States,* 249 F.2d 293, 294-95 (10th Cir. 1957)). The government's conduct of arresting and prosecuting the parents-defendants violates fundamental fairness and a universal/humane sense of justice.  The government's conduct is simply **outrageous!** *See United States v. Russell,* 411 U.S. 423, 431-32 (1973) (outrageous conduct occurs when the acts of the government are "so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction.").

## III. CONCLUSION

For the foregoing reasons, the parents-defendants' motion to dismiss should be granted.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

/S/

Western District of Texas
SERGIO GARCIA
Richard C. White Federal Building
700 E. San Antonio, Suite D-401
El Paso, Texas 79901
(915) 534-6525

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of November, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/CMF system which will send notification of such to the following: AUSA, Noemi Lopez, Office of the U.S. Attorney, Richard C. White Building, 700 E. San Antonio, Suite 200, El Paso, TX 79901.

/S/
SERGIO GARCIA

15

RECEIVED
NOV - 7 2017

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| Elba Luz Dominguez-Portillo | ) | Case Nos. 17-MJ-4409-MAT |
| Natividad Zavala-Zavala | ) | 17-MJ-4462-MAT |
| Jose Francis Yanes-Mancia | ) | 17-MJ-4461-MAT |
| Blanca Nieve Vasquez-Hernandez | ) | 17-MJ-4499-MAT |
| Maynor Alonso Claudino-Lopez | ) | 17-MJ-44-56-MAT |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

On this day, this Court considered the Defendants' Motion to Dismiss (hereinafter the "Motion"). This Court, having considered the same, is of the opinion that the Motion should be GRANTED.

IT IS THEREFORE ORDERED that the Defendants' Motion to Dismiss (Doc. No. ___) is hereby **GRANTED**.

**SO ORDERED.**

SIGNED AND ENTERED this ____ day of _____, 2017.

_____
MIGUEL A. TORRES
UNITED STATES MAJISTRATE JUDGE

16